**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

FORD MOTOR CREDIT COMPANY, LLC,

                Appellant,

v.                                    CIVIL ACTION NO.  5:10-cv-00811

BONNIE LOU HICKS,

                Appellee,

HELEN M. MORRIS,

                Trustee.

**MEMORANDUM OPINION AND ORDER
REVERSING IN PART DECISION OF BANKRUPTCY COURT**

This is an appeal from a decision of the United States Bankruptcy Court for the Southern District of West Virginia, Beckley Division, denying Appellant/Creditor, Ford Motor Credit Company, LLC ("Ford") relief from the automatic stay in order to obtain possession of a Ford F250 truck against Appellee/Debtor, Bonnie Lou Hicks.   For the reasons stated herein, the decision of the Bankruptcy Court is reversed in part.

*I.*

On February 9, 2007,  Bonnie Lou Hicks ("Appellee") and her son, Christopher Hicks, purchased a Ford F250 Truck from Covington Ford, Inc.  According to the retail installment contract, the Hicks purchased a new "2007 Ford F250 Vehicle Identification Number ("VIN") 1FTSX21536EA16313" for personal use.  The contract purportedly signed by both Bonnie and Christopher Hicks included an assignment to Ford Motor Credit Company and the following

statement: "You are giving a security interest in the vehicle being purchased." The purchasers agreed to seventy-two (72) monthly payments of $513.15 beginning March 11, 2007. On the same day, the Hicks executed an Application for Certificate of Title for a Motor Vehicle wherein the motor vehicle was described as a "Ford 2007 VIN 1FTSX21536EA16313." Thereafter, a West Virginia Certificate of Title dated March 13, 2007, was issued wherein the collateral was described as a Ford 2006 VIN 1FTSX21536EA16313." On the face of the Certificate of Title, Ford Motor Credit Company was identified as the First Lienholder. Bonnie and Christopher Hicks were listed as owners.

One year after the purchase, on February 25, 2008, Appellee filed a Chapter 13 bankruptcy Petition and Plan. In accordance with her Plan, Appellee agreed to remit a monthly payment of $288.00 for sixty (60) months to the Bankruptcy Trustee, Helen Morris, as payment for her scheduled debts.[1] On August 13, 2008, the Trustee objected to Appellee's Plan "on the basis that [the Plan] d[id] not provide a treatment of the 910 claim of Ford Motor Credit Company . . . which claims an obligation of $30,386[.]84 secured by a 2007 F250 Truck." (Trustee's Recommendation Regarding Confirmation and Trustee's Objection to Plan (Document 2-5)). The Trustee asserted that the Plan was not feasible if the secured claim of Ford Motor Credit Company, LLC ("FORD") was included. (*Id.*) In her Petition, Appellee listed, *inter alia*, that she owned a 1999 Chevrolet Blazer. However, she did not list Ford as a creditor or indicate that she was a co-buyer on the purchase of a Ford F250 Truck with her son. On August 21, 2008, Appellee amended Schedule D

[1] "Chapter 13 'provides a reorganization remedy for consumer debtors and proprietors with relatively small debts.'" *Tidewater Finance Co. v. Williams*, 498 F.3d 249, 252 (4th Cir. 2007) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991)). In this voluntary proceeding, the "debtor submits a repayment plan to the bankruptcy court, which will confirm the plan if it meets statutory criteria that protect creditor's interests" and if the confirmed plan is successfully completed, the debtor "receives a discharge of remaining eligible debts." (*Id.*) (citation omitted).

of her Petition to include Ford as a creditor holding a secured claim for a "2006 Ford" and Schedule H to list Christopher S. Hicks as a co-debtor. (Document 2-6). On August 27, 2008, following a Plan Confirmation Hearing wherein Appellee testified that the claim was current, the Bankruptcy Court confirmed Appellee's Plan to make monthly payments to the Bankruptcy Trustee. However, with respect to "Ford Motor Credit on 2006 Ford" the Trustee noted that "the [Appellee was] only a co-signor and [that] payments are being made directly [to Ford] outside [of] the plan by a non-debtor." (Order Confirming Chapter 13 Plan (Document 2-7)). The Order also provided that "[in] the event of a post-confirmation default . . . the debtor may lose his/her right to serve as a disbursing agent on th[e] claim and the claim, along with the post-confirmation default amount, may be paid through the plan." (*Id*.) Ford did not object to the Plan.

On September 9, 2009, Ford moved pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure to terminate the automatic stay afforded to Debtor Bonnie Lou Hicks, or in the alternative, for adequate protection. (Motion to Terminate Automatic Stay Pursuant to Bankruptcy Rule 4001, or in the Alternative Adequate Protection ("Appellant's First Motion") (Document 2-9)). Ford alleged that: it had a valid security interest in the 2006 Ford F250 VIN: 1FTSX21536EA16313, pursuant to the Retail Installment Contract, it held a Certificate of Title on the collateral, 2006 Ford F250 VIN: 1FTSX21536EA16313, its interest was properly perfected by the Certificate of Title and had not been terminated, as of the date of its motion, the debtor was in arrears for the months of June 2009 through August 2009 for a total of $1,521.36, and it was suffering irreparable harm from continuation of the 11 U.S.C. § 362 automatic stay. (*Id* at 2-4.) Ford also alleged that the debtor retained possession and continued to use and enjoy the collateral while the same continued to depreciate in value without adequate protection and compensation. (*Id*. at 3-

4).  Ford sought an order: (1) terminating the stay, (2) authorizing the debtor to surrender possession of the property, (3) barring the debtor's right of redemption, (4) allowing it to send to the debtor and co-debtor any and all notices required by state and federal law, regulation or statute and (5) barring the Trustee's interest in the property.  (*Id*. at 4.)  Ford also requested that "any issues relating thereto be adjudicated  at the first hearing held on th[e] motion."  (*Id*.)

On the same day, Ford also filed a motion to terminate the co-debtor stay, pursuant to Bankruptcy Rule 9014, against non-debtor and co-signor, Christopher Hicks.  (Motion to Terminate §1301 Co-debtor Stay ("Appellant's Second Motion") (Document 2-10)).   Ford stated that "to the extent that this plan filed by the debtors to pay such claim, including contractual interest on the amount of movant's allowed unsecured claim over the duration of the debtor's Plan, movant is entitled to relief from the § 1301 co-debtor stay to the extent necessary to collect this unpaid portion of its claim." (*Id*. at 3).[2]  Neither Appellee,  nor her son and co-debtor, filed an opposition or other response to the motions.  The only response to Ford's motions came from the Trustee wherein she asserted that the debtor was current on her  payments under the confirmed Chapter 13 Plan and that Ford's claim was paid directly by the debtor.  (Trustee's Response to Ford Motor Credit Co.'s Motion for Stay Relief (Document 2-12)).  The Trustee explained that the Chapter 13 Plan provided for a cure for post-petition delinquency in that a debtor will lose the "privilege of serving as a disbursement agent for th[at] payment and the on-going payments [would] need to be made through

---

[2]  Attached to each motion were the following documents: (1) Ford Credit Sales Contract for the purchase of a "2007 Ford F250 VIN 1FTSX21536EA16313" purportedly signed by Buyer, Bonnie Hicks and co-buyer Christopher Hicks; (2) Gap Coverage Deficiency Waiver Addendum (illegible copy), (3) Notice to Cosigner dated February 9, 2007, purportedly signed by Christopher Hicks; (4) State of West Virginia Department of Transportation Certificate of Title in the name of Bonnie J. Hicks and Christopher S. Hicks for a "2006 FORD VIN 1FTSX21536EA16313," wherein Ford Motor Credit Co. is listed as first lienholder, and (5) Application for a Certificate of Title for a Motor Vehicle wherein the vehicle description listed a "2007 Ford VIN 1FTSX21536EA16313."

the plan[.]" (*Id*.) The Trustee instructed Ford on the requirements for an agreed order to resolve the delinquency and, in the event of a foreclosure, provided Ford with certain language that should be included in any such foreclosure order. (*Id*.) Ford did not file a reply or other response to the Trustee's submission.

## II.

The Bankruptcy Court conducted a preliminary hearing with respect to the motions on September 18, 2009, and a final hearing on January 14, 2010. Counsel for Appellee appeared at each hearing. However, neither party has included, in the record, any information about what transpired during the preliminary hearing. During the final hearing, counsel for Appellee addressed the Bankruptcy Court first and advised that the Hicks financed a 2007 F-250 Ford, however, the Certificate of Title describes the vehicle as a 2006 Ford model. Counsel further advised that legal action was being considered against the car dealer and Ford if "they contracted and charged [the Hicks] for [a truck] that was supposed to be a [2007] [but was a 2006.]" (January 14, 2010 Transcript of Proceeding Before the Honorable Ronald G. Pearson United States Bankruptcy Judge ("Tr.") (Document 2-15) at 3.) The Bankruptcy Court inquired of counsel for Appellant, Mr. Taylor George of Mapother & Mapother, with respect to its motions and any communications with the Hicks to resolve the motions. Appellant asserted that the Hicks were $1500 in arrears on the monthly car payments as of the filing of the motions in September 2009; their failure to pay had continued; the delinquency was not in dispute; and that Ford possessed a security interest in the vehicle. Appellant argued that while there seemed to be a discrepancy between the description of the collateral on the retail installment contract and the certificate of title, the truck's VIN number was the same on the relevant documents. (Tr. at 17.) In response to the Bankruptcy Court's inquiry

regarding whether Ford had a perfected security interest, Appellant responded affirmatively and explained that both the retail installment contract and application for certificate of title included a reference to a vehicle with a 2007 model year and that any discrepancy on the certificate of title was a "typographical error" made by the state. (Tr. at 18-19.) Appellant argued that it should not be held responsible for an error on the certificate of title. However, Appellant could not provide the Bankruptcy Court with legal authority for the proposition that it possessed a security interest in the collateral described in the retail contract when the certificate of title, received by Ford in 2007, described a different vehicle (by model year). (Tr. at 19.) Appellee argued that Ford was attempting to lift a stay in an instance where it "do[esn't] even know what it is." Appellee argued that it appeared she and her son were charged for a 2007 truck, which would cost substantially more money than a 2006 model, which they were given. Based on this theory, Appellee stated that "they may not be behind in the payments." Counsel for Appellee conceded that there was nothing in the record to inform the Bankruptcy Court that the representations made to the Hicks, at the time of the sale, was that the vehicle in question was a 2007.

At the conclusion of the hearing the bankruptcy court stated, in relevant part that:

> there is absolutely no admissible evidence today and no clear evidence, other than we have great confusion here and serious question as to whether Ford has any security interest on the 2007 vehicle at all, and they may have an even greater problem. If this turns out to be a 2006, which the certificate of title says it is, and they made representations during the sale, you know, that's something that we don't have jurisdiction to consider, but we do think that the state courts do.

> The stay relief is denied because there has been no showing consistent with the duties that the movant has and the burden of proof that the movant has, under [Section] 362, to show that you have a security interest in the vehicle in question; that payments aren't

current or that other efforts aren't current to make sure that there is
currency with the creditor.

(Tr at 24.)  The Bankruptcy Court also denied the motion against the co-debtor for the same reasons

and noted that Ford had not contacted the co-debtor as the court had previously directed in such

situations.  (Tr. at 25.)  Additionally, the Bankruptcy Court admonished Appellant's counsel about

his firm's practice of failing to communicate with counsel for debtors.  The Bankruptcy Court

awarded attorney fees to Appellee "for coming to a hearing that is absolutely unnecessary and . . .

should not have occurred had the movant's counsel known what was in their own papers [referring

to the discrepancy of the model year of the vehicle] to which they apparently didn't bother to

investigate."  (Tr. at 25.)

On February 1, 2010, the Bankruptcy Court memorialized its findings in a written order

denying Ford's motions.  (Memorandum Order Denying Ford Motor Credit's Motions for Stay

Relief and for Co-Debtor Stay and Find Cause to Assess Costs to Ford Motor Credit and Mapother

and Mapother ("Memo. Order") (Document 2-17)).  Specifically, the Bankruptcy Court found that

the retail installment contract described the purchased vehicle as a 2007 F250; the application for

title submitted to the West Virginia Department of Motor Vehicles indicated that the vehicle was

a 2007 Ford F250; the issued certificate of title, in possession of Ford since 2007, clearly indicated

that the vehicle was a 2006 vehicle; a lien of Ford appears on the face of the title; and that these

documents list the same VIN number.  The Bankruptcy Court concluded that the pleadings were

insufficient  and that Ford had not met its burden warranting the termination of the relevant stays.

(Memo. Order at 4.)[3]

---

[3]  In a footnote, the Bankruptcy Court found that auto manufacturers like Ford Motor Company established
a convention or standard for VIN numbers.  (Memo. Order at 1.)  The Court concluded, using the convention employed

(continued...)

The Bankruptcy Court also addressed counsel for Appellee's statement that prior to the hearing he had spoken to an attorney of the law firm representing Ford and sought a continuance of the final hearing until the issue of the security interest could be resolved. The Bankruptcy Court found that "there was no good reason for Ford . . . to have objected to the continuance," the fifty minutes in the final hearing could have been avoided, and the non-responsive answers offered by Appellant's counsel "showed disrespect of opposing counsel and the Court and . . . the Court had a duty to recognize that in the ruling in this case." (*Id*.) The Bankruptcy Court also found that the law firm representing Ford "conducted themselves in violation of Bankruptcy Rule 9010(b)"[4] and that an award of Appellee's expenses "in defending a meritless motion for stay relief" was appropriate. (Memo. Order at 5.)

Thereafter, on February 10, 2010, counsel for Debtor filed a motion for reimbursement of fees and costs incurred in defending against Ford's motions. (Motion for Reimbursement of Fees and Time Expended in Defendant Motions Propounded by Ford Motor Credit (Document 2-18)). Appellee sought reimbursement for four hours of time, at a rate of $200.00 per hours, for a total of $800.00. (*Id*.) In response, Ford noticed an appeal of the Bankruptcy Court's February 1, 2010 Order; asserted that the Bankruptcy Court lacked jurisdiction to enter an order of fees, pending resolution of the appeal, and requested that the motion be denied for want of jurisdiction, or

---

[3](...continued)

by Ford, that the VIN number relating to the Ford truck in this case "clearly indicat[es] . . . contrary to the assertions of counsel for Ford that the West Virginia Department of Motor Vehicles had made a mistake, the vehicle in question is a 2006." (*Id*.) On appeal, Ford does not challenge this finding.

[4] Rule 9010(b) of the Federal Rules of Bankruptcy provides that, "[a]n attorney appearing for a party in a case under the Code shall file a notice of appearance with the attorney's name, office address and telephone number, unless the attorney's appearance is otherwise noted in the record."

alternatively, stayed pending resolution of the appeal. (Response to Motion for Reimbursement of Fees (Document 2-19)).

On June 10, 2010 Appellant filed the instant appeal of the Bankruptcy Court's February 1, 2010 Order by identifying four issues for review:

> 1. Whether the Bankruptcy Court committed reversible error by denying the creditor/appellant's uncontested motion to terminate the the [sic] stays pursuant to 11 U.S.C. §§ 362 and 1301 when the court sua sponte raised a question of fact and law, for the first time, at the hearing on said motions, regarding the discrepancy between the model year of Appellant's collateral as noted on the contract/security agreement and West Virginia Certificate of Title and failed to give Appellant an opportunity to address the question of law.

> 2. Whether the Bankruptcy Court committed reversible error on the law by ruling that under West Virginia law, the Appellant did not have a security interest in the collateral described in Appellant's proof of claim, to which no objection had been filed by any party, when the only discrepancy between the vehicle described in the contract/security agreement between Appellant and Appellee, and the certificate of title issued by the State of West Virginia, was the model year.

> 3. Whether the Bankruptcy Court committed reversible error by authorizing the attorney for the Appellee to submit a motion for reimbursement of his expenditures of time in defending what the Bankruptcy Court characterized as a meritless motion for stay relief, especially in light of the fact that no objection to the motion had been filed, that the issue regarding the discrepancy between the model year on the contract and title never had been raised in any pleading filed with the Bankruptcy Court, and Appellant was not given a reasonable opportunity to address this issue of law with the Bankruptcy Court prior to its ruling.

> 4. To the extent that the Bankruptcy Court's ruling is in the nature of contempt, regarding the alleged conversations or alleged lack of communications between counsel in this matter, whether the Bankruptcy Court committed reversible

> error by not taking further testimony of the parties directly
> involved in the conversations before issuing its ruling.

(Brief of Appellant Ford Motor Company LLC ("Ford Brief") (Document 4) at 2-3.)  The Court will

consider the thrust of Appellant's arguments below.[5]

III.

A district court sitting in appellate review of a disputed bankruptcy court decision reviews

factual findings of the bankruptcy court for clear error and legal conclusions *de novo*.  *Educ. Credit*

*Mgmt. Corp. v. Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *Educ. Credit Mgmt. Corp. v. Frushour*,

433 F.3d 393, 398 (4th Cir. 2005); *see also In re Modanlo*, 266 F.App'x 272, 274 (4th Cir. 2008)

(unpublished decision) ("In a bankruptcy appeal, we review the bankruptcy court's decision directly,

applying the same standard of review as did the district court."); Federal Rule of Bankruptcy

Procedure 8013; ("On an appeal the district court or bankruptcy appellate panel may affirm, modify,

or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further

proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside

unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court

to judge the credibility of the witnesses.")

---

[5]  On September 23, 2011, Bonnie Hicks initiated an Adversary Proceeding, in her bankruptcy case, against Ford for its alleged "unlawful collection on a fraudulently induced retail installment contract."  Bonnie Hicks alleged that the contract misrepresented the vehicle she purchased as a 2007 vehicle when it was in fact a 2006 model.  She asserted three causes of action against Ford: Count One, common law fraud for the misrepresentation of the model year of the vehicle; Count Two, violations of the West Virginia Consumer Credit Protection Act ("WVCCPA") for Ford's alleged attempts to collect a debt when Ford was aware or should have been aware that Bonnie Hicks was represented by counsel, and for unreasonably publicizing information related to the indebtedness; and Count Three, failing to provide an account history to Plaintiff upon her request.

Ford moved to dismiss the complaint.  On December 28, 2011, after conducting a hearing on the motion, the Bankruptcy Court dismissed the complaint without prejudice.  The court found that  "under the specific circumstances of this automobile debt collection case, [it] d[id] not have jurisdiction to issue a final ruling in this Adversary proceeding."  *In re Bonnie Hicks*, AP No. 11-5024, Bk No. 5:08-bk-50056 (Bankr. S.D. W. Va. Dec. 28, 2011).

*IV.*

A debtor's initiation of a Chapter 13 proceeding triggers an "automatic stay" under 11 U.S.C. § 362(a) that "bars creditor collection activity for the duration of the proceeding[.]" *Tidewater Finance*, 498 F.3d at 252; *Estate Const. Co. v. Miller & Smith Holding Co., Inc*., 14 F.3d 213, 219 (4th Cir. 1994) (Pursuant to 11 U.S.C. § 362, as soon as a bankruptcy petition is filed, the automatic stay provisions take immediate effect, preventing all pre-petition creditors from taking action to collect their debts.) The automatic stay offers protection from, among other things, "any act to create, perfect or enforce any lien against the property of the estate" or "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) - (4). However, Congress has included a provision for relief from the automatic stay under certain circumstances. Section 362(d) provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying or conditioning such stay – *for cause*, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d)(1) (emphasis supplied). The Bankruptcy Code does not define "cause," instead "courts must determine when discretionary relief is appropriate on a case-by-case basis." *Ivester v. Miller*, 398 B.R.408, 425 (M.D.N.C. 2008) (quoting *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994)). "Hearings to determine whether the stay should be lifted are meant to be summary in character." *Estate Const. Co.*, 14 F.3d at 219. "That the statute sets forth certain grounds for relief and no others indicates Congress' intent that the issues decided by a bankruptcy court on a creditor's

motion to lift the stay be limited to these matters." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 31 (1st Cir. 1994); *see* 11 U.S.C. § 362(d). A lift stay proceeding does not "involve full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate." *Grella*, 42 F.3d at 32. In determining whether relief should be granted, courts "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re White*, 410 B.R. 195, 200 (Bankr. W.D. Va. 2008) (citing *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992)).

In this instance, Appellant sought relief from the automatic stay under Section 362(d)(1), by asserting that it held "a valid security interest in the 2006 Ford F250 VIN: 1FTSX21536EA16313"; that its interest was "properly perfected . . . by the Certificate of Title which has not been terminated and covers the property described [in the Retail Installment Contract]"; and that its interest was not adequately protected. (Appellant's First Motion, ¶¶ 10-11.) Appellant argues that the Bankruptcy Court erroneously applied the burden of proof upon Ford, rather than the Appellee, to refute the validity of its lien and that Appellee failed to "sustain her burden." (Brief of Appellant at 8-9.) In opposition, Appellee, in a single sentence, merely stated that the movant has the burden of proof on the validity of its lien. (Response Brief of Appellee, Bonnie Lou Hicks ("Hicks Brief") (Document 6) at 7.)

Section 362 sets forth the burden of proof for motions for relief of the stay, by providing, in relevant part: "In any hearing under subsection (d) . . . of this section concerning relief from the stay of any act under subsection (a) of this section – (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property; and (2) the party opposing such relief

has the burden of proof on all other issues. 11 U.S.C. § 362(g). The moving party has the "initial burden of demonstrating an appropriate basis for relief[,] [o]nce that has been accomplished . . . the burden of proof rests upon the Debtor to show a lack of cause. . . . " *In re White*, 410 B.R.195 (Bankr. W. D. Va. 2008). In *White*, a Bankruptcy Court in Western District of Virginia, considered a dispute respecting the burden of proof on motions for relief under Section 362(d)(1) and explained that:

> While § 362(g) clearly places the burden of proof on the Debtor for all issues other than the issue of the Debtor's equity in property in hearings on motions for relief from the automatic stay, it does not strip the movant of his or her initial burden in filing such motions. In fact, several authorities note clearly that the movant still carries the initial burden of establishing a prima facie case; only then does the burden of going forward shift to the Debtor.

*White*, 410 B.R. at 195, 201 (citing 3 Collier on Bankruptcy ¶ 362.10 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.); Russell, Bankr. Evidence Manual, § 301:44 at pages 952-53 (West 2008-2009 ed.); *see also Schneideman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104,110 (2d Cir. 2002); *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139,142 (2d Cir. 1999)). To establish a prima facie case under Section 362(d)(1), the movant, in this case the Appellant, must (1) demonstrate a debt owing from the debtor to the movant; (2) a valid security interest possessed by the movant; and (3) a decline in the value of the collateral securing the debt combined with the debtor's failure to provide adequate protection of the movant's interest. Only then does the burden shift to the debtor to produce evidence showing that the movant is adequately protected. *In re Harrington*, 282 B.R. 637, 639 (Bankr. S. D. Ohio 2002) (citation omitted); *see also First National Bank of Barnesville v. Alba (In re Alba)*, 429 B.R. 353 (Bankr. N. D. Ga. 2008) (movant failed to meet its burden to establish a valid security interest in debtor's personal property); *In re Henderson*,

395 B.R. 893 (Bankr. D. S.C. 2008) (Bank bears the burden of proof on validity of its lien, the amount of its debt and debtor's lack of equity); *In re Pelham Enterprises, Inc*., 376 B.R. 684, 689 (Bankr. N.D. Ill. (2007) (creditor seeking to modify stay to liquidate collateral has the burden of showing the existence, the validity, and the perfection of its secured claim against the property.) A secured creditor's property rights may be adequately protected through a stream of payments, a replacement lien or other compensation. *In re ASI Reactivation, Inc*. 934 F.2d 1315, 1320 (4th Cir.1991); *see* 11 U.S.C. § 361.

In light of the foregoing authorities, the Court finds that the Bankruptcy Court did not improperly shift the burden of proof as between the parties in this case. The Bankruptcy Court appropriately inquired of the Appellant with respect to its interest in the vehicle and the basis for its motion. In doing so, the Bankruptcy Court considered the documents Appellant proffered in support of its motion and the validity of its interest, a matter the Appellant was required to demonstrate. At the hearing, the Bankruptcy Court considered that Appellant alleged that a debt was owed to it from Appellee and that "it [did not] appear to [the court that] there has been any good faith challenge to the fact that the payments are not current." (Tr. at 17.) Thereafter, the Bankruptcy Court inquired of Appellant about its documentation establishing a security interest in the vehicle and the grounds and case authority to support its interest, in light of the discrepancy of the description of the collateral that existed on the face of the documentation supplied to the Bankruptcy Court by the Appellant.[6] The Bankruptcy Court found that the Appellant failed to satisfy its burden of proof. Based on the Bankruptcy Court's finding, the burden did not shift to the Plaintiff to refute or contest

[6] For the proposition that it was Appellee's burden to refute the validity of the interest, the Court finds that Appellant's reliance (Ford's Brief at 8) on *In re Scott*, 42 B.R. 35, 37 (Bankr. D. Or. 1984) is misplaced in that the debtor-in-possession in that case stipulated to the creditor's lien. There has been no such stipulation in this case.

the validity of the lien.  Although from the opening of the final hearing, the Bankruptcy Court was placed on notice that the Appellee contested whether a valid and or perfected security interest existed relating to the vehicle.[7]  Thus, no error was committed.

To the extent that Appellant argues that the Bankruptcy Court erred when it failed to grant its  motions to terminate the Section 362 stay when Appellee failed to file a response or brief in opposition (Ford's Brief at 7), this Court disagrees.  Appellant offers no authority for the proposition that a failure to file an opposition brief warrants the Bankruptcy Court to grant its motion without consideration of the propriety of the relief sought, particularly when the non-moving party orally opposes the motion during the Bankruptcy Court's scheduled hearings.  Additionally, the Court observes that the Bankruptcy Court, in its order scheduling the preliminary hearing on Appellant's motion, stated that "any party with an objection or response to the motion must appear at the preliminary hearing prepared to make their representations and legal argument to the Court. . . . [The] failure of counsel for the Debtor(s) to appear at the preliminary hearing may result in the Court granting the relief requested without further hearing. Any written objection/response to motion must

---

[7]  Moreover, a review of the Transcript of the January 14, 2010 hearing reveals that: the court did not "sua sponte raise a question of fact and law, for the first time, at the hearing on said motions."  (Ford's Brief at 2.)  Counsel for Appellee began the hearing by stating his observation that Ford seemed to have financed a 2007 F-250, but the certificate of title "shows a 2006."  (Tr. at 3.)  Counsel for Appellee also stated in open court that he had engaged in a conversation "about these documents" with Appellant's counsel of record, Thomas Canary, on the day prior to the hearing. (Tr. at 21-22.)  In the first issue presented on appeal, Appellant asserts that the Bankruptcy Court failed to give Appellant an opportunity to address the question of law occasioned by the discrepancy between the model year of Appellant's collateral as noted on its documentation.  To the extent that the Appellant is suggesting it was prejudiced in some manner, this Court finds that the suggestion is belied by the transcript in this matter and the Appellant's own documents.  Just as the Bankruptcy Court observed, this discrepancy is readily apparent on the face of Appellant's own documents;  the hearing was scheduled to address Appellant's own motions, the Appellant has the burden of demonstrating its interest in the collateral, and Appellant was not prepared to offer any authority for the court to find that its interest was valid or perfected.  *See* Tr. at 19 ("I'm sure I could provide something for Your Honor if I had time to do so, unfortunately this has come out of left field.")   Based on the foregoing, the Court hardly finds that Appellant should have been surprised about the Bankruptcy Court's inquiry.  Additionally, at no time after the hearing and before the Bankruptcy Court's entry of his written findings did Appellant offer any authority to support is assertion that the "error" in its documentation did not constitute a fatal flaw to its prima facie case.

include a specific basis for such objection." (Notice of Preliminary Hearing, In re Hicks, No. 5:08-bk-50056 (Bankr. S.D. W. Va. Sept. 9, 2009)). This notice from the Bankruptcy Court seems to contemplate an occasion in which an oral objection, rather than a written objection, could be proffered. Upon consideration of the facts in this case, the Court finds that a lack of a written objection to the instant motions did not relieve the Appellant from proceeding with its obligation to demonstrate its right to relief.

The Court will next consider Appellant's challenge to the Bankruptcy Court's determination that it does not have a security interest in the collateral. Appellant contends that it has a valid and perfected security interest in the collateral. The Ford F-250 truck which is the subject of the instant dispute is a consumer good purchased for personal property. W. Va. Code, § 46-9-102 (a)(23) ("'Consumer goods' means goods that are used or bought for use primarily for personal, family or household purposes."); Retail Installment Contract (Document 2-9 at 6). Transactions creating a security interest in personal property are governed by the West Virginia Commercial Code. W. Va. Code § 46-9-109(a)(1) ("[T]his article applies to (1) a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract[.]"); W. Va. Code §46-1-201(b)(35) ("'Security Interest' means an interest in personal property or fixtures which secures payment or performance of an obligation."). A security agreement creates or provides for a security interest. W. Va. Code §46-9-105(a)(76). Pursuant to West Virginia law, a security interest attaches and is enforceable against the debtor and third parties with respect to the collateral, in relevant part, only if (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. W. Va. Code §§46-9-203(a) and (b). With respect to

perfection, goods covered by a certificate of title, like the motor vehicle in this case, "become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority." W. Va. Code § 46-9-303(b); *see also* W. Va. Code §§ 46-9-309(1), 46-9-311(a).

The thrust of the disagreement in this matter is whether the description of the collateral in the security agreement and on the certificate of title serves to invalidate Appellant's secured interest. This Court finds that it does not. As Appellant contends, its security interest is enforceable as against the Appellee and her son. Upon consideration of West Virginia Code Section 46-9-203, the value of the consumer transaction in this case, the purchase of the Ford F-250, was given on February 9, 2007, as displayed on the Retail Installment Contract; Appellee and her son, the buyer and co-buyer to the transaction, possess the collateral and have rights to it and the power to transfer the rights; and finally, both the Appellee and her son's signatures are affixed to the Retail Installment Contract. Moreover, there is a statement on the contract that indicates that the Appellee and her son "are giving a security interest in the vehicle being purchased." The description of the collateral, as noted previously is that of a 2007 Ford F250 VIN: 1FTSX21536EA16313. According to the applicable West Virginia law, "a description of personal . . . property is sufficient, whether or not it is specific, if it reasonably identifies what is described." W. Va. Code § 46-9-108(a). Collateral is reasonably identified if the description is a "specific listing," "computational or allocational formula or procedure." W. Va. Code § 46-9-108(b). However, a supergeneric description, like "all the debtor's assets" or "all the debtor's personal property" does not reasonably identify the collateral. W. Va. Code § 46-9-108(c). There is no dispute that generally VIN numbers are unique to each vehicle and can be used to identify a specific automobile. The Court finds that

the instant property description reasonably identifies the collateral, by make, model and VIN–a description that is not supergeneric.

The Bankruptcy Court, after the conclusion of the final hearing, considered the auto manufacturer's established convention or standard for VIN numbers. Attached to the written order denying Appellant's motions, the Bankruptcy Court included a document that explains the 2006 Vehicle Identification Guide for Ford. This Court observes that neither party has objected to the Bankruptcy Court's consideration of this Guide, sua sponte, or contested the use of the document in the instant appeal. Therefore, the Court will consider the Guide in its consideration of the VIN number identified on the Retail Installment Contract. According to the Guide, a typical VIN number has 17 "positions" which identify various information about a car, including its manufacturer, assembly plant, engine type and the model year of the vehicle. Relevant to the instant case, Position 10 identifies the model year. Using the VIN convention discussed in the 2006 Ford Vehicle Identification Guide, position 10 in the instant vehicle is denoted with a 6, representing 2006. Consequently, the Bankruptcy Court found, without objection by the parties, that the instant vehicle is a 2006 (Memo. Order at 1, n.1). No party has asserted that this VIN number is different from that located on the actual Ford F-250 Truck. Therefore, upon consideration of the foregoing, the Court finds that the Bankruptcy Court's finding that the vehicle is a 2006 is not clearly erroneous. However, even if the Bankruptcy Court did not consider Ford's VIN Guide, as noted above, this Court's ruling that the description of the collateral is sufficient would not change because the Court finds that the description of the make, model and VIN number of the vehicle is a reasonable description of the vehicle. Therefore, the Court finds that Appellant has an enforceable security interest against the debtors.

Appellant's security interest is perfected in that Appellant applied for and obtained a certificate of title to cover this consumer good. The Bankruptcy Court found that the Appellant's application for the title to the West Virginia Department of Motor Vehicles indicated the vehicle was a 2007 Ford F-250 and the issued Certificate of Title in the possession of Appellant clearly denotes the vehicle as a 2006 Ford. Of import, the Bankruptcy Court found that "all documents list the vehicle VIN as "VIN: 1FTSX21536EA16313." Typically, a person desiring to obtain a security interest in a vehicle will consider whether the vehicle is subject to a security interest by looking on the certificate of title. An examination of Appellee's Certificate of Title includes the name of the owners of the vehicle, a description of the vehicle, the name of the First Lienholder and the date of the issuance of the Certificate of Title. Based on the various bankruptcy schedules in the record, Appellee owns only one Ford vehicle. Therefore, there is no reasonable dispute as to the identity of the collateral where the property is described not only by the make and model year, but by the VIN number which is unique to a vehicle and consistently listed on the relevant documentation.

Moreover, although a financial statement is not required for perfection of the instant type of collateral, the Court finds instructive how the West Virginia Commercial Code views the description of collateral on financing statements. Section 46-9-504 provides that "[a] financing statement sufficiently indicates the collateral that it covers if the financing statement provides (1) a description of the collateral pursuant to Section 9-108; or (2) an indication that the financing statement covers all assets or all personal property. W. Va. Code § 46-9-504. According to the Comment to this provision, "[a] financing statement sufficiently indicates collateral claimed to be covered . . . if it satisfies the purpose of conditioning perfection on the filing of the financing statement, i.e., if it provides notice that a person may have a security interest in the collateral claimed." Section 46-9-

504, Comment 2.  Additionally, in discussing the effectiveness of financing statements, the West Virginia Commercial Code provides that "[a] financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading."  W. Va. Code § 46-9-506(a).  The provision further explains that a "seriously misleading" financing statement fails to sufficiently provide the name of the debtor.  W. Va. Code § 46-9-506(b).  Applying this framework to the relevant documents here, the Court finds that the consistent use of the VIN detracts from any finding that the Certificate of Title is "seriously misleading."  Irrespective of the discrepancy of the model year of the vehicle purchased on February 9, 2007, by the Appellee and her son, the description of the property on the Retail Installment Contract, Application for Certificate of Title and the Certificate of Title provides notice of the debtors name, the creditor which may have a security interest in the collateral claimed, and a reasonable description of the property.  The Court finds that this information is sufficient to provide notice of the security interest. *Farmer v. Green Tree Servicing, LLC (In re Snelson)*, 330 B.R. 643 (E.D. Tenn. 2005) (description of mobile home in purchase money security agreement sufficient to identify collateral from other property owned by debtor and served to provide lender with a valid security interest in the model home, notwithstanding mistake as to model year of the mobile home). Therefore, based on the foregoing, the Court respectfully finds that the Bankruptcy Court erred when it found that Appellant failed to satisfy its burden of demonstrating that it held a security interest in the Appellee's Ford 2006 vehicle.

In support of the Bankruptcy Court's decision, Appellee argues that the disputed claim is somehow tainted by the discrepancy between the model year Appellee believed she purchased and the model year of the vehicle actually purchased.  Appellee suggests the transaction was fraudulent.

Although Appellee included the same contention at the motion hearing before the Bankruptcy Court, at that time, there were no actions pending relating either to the dispute or any actionable harm suffered by Appellee and her son in the vehicle transaction. The hearing on the motion for relief from stay is a summary proceeding. Therefore, the Bankruptcy Court could not consider that issue at the time. Neither can this Court. If Appellee wishes to pursue that argument, she should do so by bringing an action in the appropriate court against the appropriate parties.

*V.*

Next, the Court has considered the Bankruptcy Court's determination that attorney fees and costs ought to be assessed against Appellant and its counsel for the time Appellee spent defending against a "meritless motion." To the extent that the award of fees and costs were based on the Bankruptcy Court's erroneous ruling that Appellant did not satisfy its burden of demonstrating its security interest, the Court finds that the award should be vacated, given the foregoing findings.

Finally, in this appeal, the Court is not asked to determine whether the stay should be lifted (Ford's Brief at 20) ("For all of these reasons, the Appellant prays that this Court find that it does have a valid security interest in is [sic] Collateral, and that as such, an award of fees and costs is not warranted.") However, even if such a request was made, the Court would decline the invitation as there has been no discussion regarding the adequacy of the protection of the creditor's interest,[8] beyond the delinquency of Plaintiff's payments, and the burden shifting concept required of Section

---

[8]  Section 361 of the Bankruptcy Code discusses "adequate protection" in three non-exhaustive examples of how such could be provided. Section 361 states that "adequate protection may be provided by (1) requiring the trustee to make ... periodic cash payments to [the secured creditor], to the extent that the stay ... results in a decrease in the value of [the secured creditor's] interest in such property; (2) providing to [the secured creditor] an additional or replacement lien to the extent that such stay ... results in a decrease in the value of [the secured creditor's] interest in such property; or (3) granting such other relief . . . as will result in the realization by [secured creditor] of the indubitable equivalent of [its'] interest in such property." 11 U.S.C. § 361.

362(d) and (g) was never employed here to require Appellee and her son to set forth any basis for whether the property at issue is or was adequately protected.[9]

*VI.*

Accordingly, for the reasons set forth herein, the Court does hereby **ORDER** that the appeal from the decision of the United States Bankruptcy Court denying Appellant/Creditor, Ford Motor Credit Company, LLC ("Ford"), relief from the automatic stay in order to obtain possession of a Ford F-250 truck be **REVERSED IN PART** and **REMANDED** to the United States Bankruptcy Court for further consideration.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    May 25, 2012

IRENE C. BERGER<br>
UNITED STATES DISTRICT JUDGE<br>
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[9] In this case, when Appellee filed for Chapter 13 relief, she also triggered the co-debtor stay under 11 U.S.C. § 1301 ("[A] creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt" unless the individual becomes liable for the debt, secured the debt in the ordinary course of business or the bankruptcy case is closed, dismissed, or converted to a Chapter 7 or 11.") In the Brief of Appellant, Ford states that "Christopher Hicks is not included as an Appellee in this matter. He was not a party to the Bankruptcy Case from which this appeal is taken." (Brief of Appellant at 4.) Appellant also asserts for the first time an argument that Christopher Hicks received the consideration of the claim held by the creditor and that the Chapter 13 plan does not propose to pay the claim. According to Appellant, the "very terms of the Bankruptcy Code" required the Bankruptcy Court to terminate the co-debtor stay. (Ford's Brief at 10.) Given the posture of this case and the argument stated for the first time in this appeal, the Court will not address herein the Bankruptcy Court's decision as it relates to the co-debtor Christopher Hicks.